**Homer N. ARCHAMBAULT,**
Appellant,

v.

**UNITED STATES of America,**
Appellee.

No. 5081.

United States Court of Appeals
Tenth Circuit.

July 16, 1955.

Robert L. McDougal, Denver, Colo. (Rollie R. Rogers and Joseph L. Sweeney, Denver, Colo., on the brief), for appellant.

James W. Heyer, Denver, Colo. (Donald E. Kelley, U. S. Atty. for the Dist. of Colorado, Denver, Colo., on the brief), for appellee.

Before PHILLIPS, Chief Judge, and HUXMAN and PICKETT, Circuit Judges.

PICKETT, Circuit Judge.

The defendant was charged in a three-count information with dispensing misbranded habit-forming drugs in unlabeled containers without a prescription

contrary to the provisions of 21 U.S.C.A. §§ 331, 333, and 353. The charge grew out of three different sales of sodium pentobarbital capsules which the defendant made to George E. McDonald, an inspector for the United States Food and Drug Administration. The case went to the jury on the evidence of the prosecution and a verdict of guilty was returned on all three counts. The defendant was sentenced to imprisonment for ten months and was fined $500 on counts one and two, the imprisonment sentences to run concurrently. On count three, the defendant was fined $1,000, but the sentence of imprisonment was suspended and probation was imposed for three years commencing at the expiration of the sentence imposed on counts one and two. This appeal is from that judgment and sentence.

The defendant maintained a place of business in Westcreek, Colorado, where he treated patients and dispensed some drugs. He held himself out as a doctor of medicine, but he had never been licensed to practice in Colorado although he had applied for a license. McDonald, dressed as an outdoorsman, first called on the defendant at his office on July 31, 1953. Upon inquiry, the defendant identified himself as "Dr. Archambault". McDonald stated to him that he was having difficulty sleeping and wanted to buy some sleeping pills. The defendant questioned him about his condition and sold him a number of sodium pentobarbital capsules, known as Nembutal, which is a trade name for sodium pentobarbital manufactured by Abbott Laboratories in North Chicago, Illinois. Subsequent purchases of the same drug were made by McDonald on August 21, and November 18, 1953. After each purchase, the defendant placed the capsules in a plain unlabeled envelope and delivered them to McDonald.

The defendant first contends that the court was without jurisdiction because the prosecution should have been under an indictment and not an information. The basis of this contention is that the cumulative penalty in the three counts is for imprisonment for more than one year, and that the defendant had not waived indictment as required by the Federal Rules of Criminal Procedure. Fed.Rules Cr.Proc. rule 7(a), 18 U.S.C.A. There is no merit to this contention. Each of the counts charged a separate offense constituting a misdemeanor and punishable by imprisonment of not more than one year. 21 U.S.C.A. § 333(a). Such offenses may be prosecuted by information. Fed.Rules Cr. Proc. rule 7(a), supra; Duke v. United States, 301 U.S. 492, 57 S.Ct. 835, 81 L.Ed. 1243; United States v. Kordel, 7 Cir., 164 F.2d 913, affirmed 335 U.S. 345, 69 S.Ct. 106, 93 L.Ed. 52; Kempe v. United States, 8 Cir., 151 F.2d 680; American Tobacco Co. v. United States, 6 Cir., 147 F.2d 93, affirmed 328 U.S. 781, 66 S.Ct. 1125, 90 L.Ed. 1575; Taylor v. United States, 9 Cir., 142 F.2d 808, certiorari denied 323 U.S. 723, 65 S.Ct. 56, 89 L.Ed. 581; Grader v. United States, 8 Cir., 21 F.2d 513. The charges in the different counts were of the same character and were properly joined. Fed.Rules Cr.Proc. rule 8(a), 18 U.S. C.A.; Peckham v. United States, 93 U.S. App.D.C. 136, 210 F.2d 693; Robinson v. United States, 93 U.S.App.D.C. 347, 210 F.2d 29; Finnegan v. United States, 8 Cir., 204 F.2d 105, certiorari denied 346 U.S. 821, 74 S.Ct. 36, 98 L.Ed. 347; Smith v. United States, 86 U.S.App.D.C. 195, 180 F.2d 775; Edwards v. Squier, 9 Cir., 178 F.2d 758.

Section 331(k) of Title 21 prohibits the doing of any act with respect to drugs if such act is done while the drug "is held for sale (whether or not the first sale) after shipment in interstate commerce and results in such article being adulterated or misbranded." 21 U.S.C.A. § 352 [1] makes provision for the

---

1. Section 352(d) reads:
"If it is for use by man and contains any quantity of the narcotic or hypnotic substance alpha eucaine, barbituric acid, betaeucaine, bromal, cannabis, carbromal, chloral, coca, cocaine, codeine, heroin,

proper labeling of drugs, and provides that if a drug contains any quantity of narcotic or barbituric acid or any chemical derivative thereof which has been found and designated by the Secretary[2] as habit forming, it shall be so labeled, and that if it is not so labeled, it is deemed to be misbranded. Under the provisions of 21 U.S.C.A. § 353, such drugs may be dispensed only upon a written prescription of a practitioner licensed by law to administer such drug. The regulation adopted by the Secretary designated pentobarbital, a derivative of barbituric acid, as habit forming, 21 C.F.R. Sec. 145.1. Section 352(d) of Title 21 declares that drugs shall be deemed to be misbranded if they are designated by the Secretary by regulation to be habit forming, unless they bear the statutory label. This regulation having been promulgated by the Secretary in conformity with the statute has the force and effect of law to the same extent as though written into the statute. Atchison, Topeka & Santa Fe Railway Co. v. Scarlett, 300 U.S. 471, 57 S.Ct. 541, 81 L.Ed. 748; Maryland Casualty Co. v. United States, 251 U.S. 342, 40 S.Ct. 155, 64 L.Ed. 297; Interstate Motor Lines, Inc., v. Great Western Ry. Co., 10 Cir., 161 F.2d 968; Regents of New Mexico College of Agriculture & Mechanic Arts v. Albuquerque Broadcasting Co., 10 Cir., 158 F.2d 900; United States v. Stanolind Crude Oil Purchasing Co., 10 Cir., 113 F.2d 194. When a drug is so designated by regulation it must be considered "habit forming" as a matter of law and no further proof is necessary.

The defendant contends that there is no evidence that the drugs purchased by McDonald had been transported in interstate commerce. The capsules were identified as having been manufactured and sold in Illinois by Abbott Laboratories. They were later held for sale and sold by the defendant without a prescription and without the statutory label after they had arrived in Colorado. Their method of transportation is unknown. We think, however, that this makes no difference as the inference is inescapable that they were transported from Illinois to Colorado. This constitutes interstate commerce even though the defendant may have acquired the capsules in Illinois and transported them himself to Colorado. National Labor Relations Board v. Fainblatt, 306 U.S. 601, 59 S.Ct. 668, 83 L.Ed. 1014; Dahnke-Walker Milling Co. v. Bondurant, 257 U.S. 282, 42 S.Ct. 106, 66 L.Ed. 239; United States v. Simpson, 252 U.S. 465, 40 S.Ct. 364, 64 L.Ed. 665; United States v. Hill, 248 U.S. 420, 39 S.Ct. 143, 63 L.Ed. 337; United States v. Sanders, 10 Cir., 196 F.2d 895, certiorari denied 344 U.S. 829, 73 S.Ct. 33, 97 L.Ed. 645; Bell v. Porter, 7 Cir., 159 F.2d 117, certiorari denied 330 U.S. 813, 67 S.Ct. 1092, 91 L.Ed. 1267; Barnes v. United States, 9 Cir., 142 F.2d 648.[3]

marihuana, morphine, opium, paraldehyde, peyote, or sulphonmethane; or any chemical derivative of such substance, which derivative has been by the Secretary, after investigation, found to be, and by regulations designated as, habit forming; unless its label bears the name, and quantity or proportion of such substance or derivative and in juxtaposition therewith the statement 'Warning—May be habit forming.'"

2. Secretary of the Department of Health, Education and Welfare.

3. In Bell v. Porter, supra, [159 F.2d 119] the court said:

"The Constitution confers upon Congress the power to regulate commerce among the several States. U.S.Const. Art. 1, § 8, cl. 3. This power to regulate commerce is not confined to commercial or business transactions. From an early date such commerce has been held to include the transportation of persons and property no less than the purchase, sale, and exchange of commodities, United States v. Hill, 248 U.S. 420, 423, 39 S.Ct. 143, 63 L.Ed. 337, and goods may move in commerce though they never enter the field of commercial competition. For example, the movement of people across State lines and the unrestricted ranging of cattle across the boundary between two States is commerce. The interstate transportation of whiskey for personal consumption, of a woman from one State to another for an immoral purpose without any element of

It is immaterial when or how the defendant may have obtained title and possession of the drugs after the interstate shipment. The purpose of the statute is to protect the ultimate consumer and it "prohibits misbranding articles held for sale after shipment in interstate commerce, without regard to how long after the shipment the misbranding occurred, how many intrastate sales had intervened, or who had received the articles at the end of the interstate shipment." United States v. Sullivan, 332 U.S. 689, 68 S.Ct. 331, 335, 92 L.Ed. 297; Strey v. Devine's Inc., 7 Cir., 217 F.2d 187, 190. In United States v. 4 Devices, Labeled in Part "Color-Therm", 10 Cir., 176 F.2d 652, 654, we said:

"The purpose of the Act is to safeguard the consumer by applying its requirements to articles from the moment of their introduction into interstate commerce all the way to the moment of their delivery to the ultimate consumer, and the Act embraces misbranding while held for sale after shipment in interstate commerce." (Footnote omitted.)

Finally, it is urged that the trial court should have sustained the defendant's motion for a directed verdict because the proof showed that the defendant had been entrapped into the commission of the offense by McDonald. There is no evidence that the inspector did anything more than call at the defendant's office and offer an opportunity for the defendant to make the sale of the drugs. This, he had the legal right to do. Sorrells v. United States, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413; Ryles v. United States, 10 Cir., 183 F.2d 944, certiorari denied 340 U.S. 877, 71 S.Ct. 123, 95 L.Ed. 637. The trial court, however, assumed that an issue of entrap-

commerce, of a kidnapped person or a stolen automobile—all constitute interstate commerce in the constitutional sense. These cases, we think, make it

ment was presented and submitted that issue to the jury with the proper instruction.

Affirmed.

clear that interstate commerce is not limited to interstate trade." (Footnote omitted.)